

Signed/Docketed
September 12, 2013

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
### The Honorable Michael E. Romero

| | |
|---|---|
| In re: ) | |
| ) | Case No. 11-37658 MER |
| LARRY RALPH GENTRY ) | |
| SUSAN ELLEN GENTRY ) | Chapter 11 |
| ) | |
| Debtors. ) | |

**ORDER**

This matter comes before the Court on the *Objection to Confirmation of Debtors' Chapter 11 Plan*[1] ("Objection") filed by 2011-SIP-1 CRE/CADC Venture LLC ("SIP"), and the *Response to SIP's Objection to Confirmation of Debtors' Chapter 11 Plan*[2] ("Response") filed by Debtors Larry Ralph Gentry and Susan Ellen Gentry (collectively, the "Gentrys"). The parties also submitted supplemental legal argument[3] on the limited issues of feasibility and guarantor liability in connection with SIP's challenge to confirmation of the Gentrys' pending Amended Plan of Reorganization[4] ("Amended Plan") dated June 11, 2012.[5] The Court, having considered the evidence and legal arguments presented by the parties, hereby makes the following findings of fact and conclusions of law.

**JURISDICTION**

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (L) as it involves the administration of the estate and confirmation of the Gentrys' Amended Plan.

---

[1] Docket No. 95.

[2] Docket No. 106.

[3] *See* Docket Nos. 128, 129, 131, 137, 138 and 148.

[4] Docket No. 63.

[5] The parties also submitted stipulated Exhibits 1 through 7 for consideration in connection with all confirmation issues. *See* Submission of Exhibits (Docket No. 132).

**BACKGROUND**

The Gentrys are 100% officers, directors and shareholders of Ball Four, Inc. ("Ball Four"), a company operating a sports complex in Adams County, Colorado. In late 2005, Ball Four borrowed approximately $1.9 Million from FirsTier Bank ("FirsTier") to pay off a previous loan and fund the construction of two buildings to expand the business. The FirsTier loan was secured by certain Ball Four assets, and the Gentrys personally guaranteed this indebtedness pursuant to the terms of two commercial guaranties dated September 22, 2005 (the "Personal Guaranties").[6]

According to the Gentrys, the construction project was underfunded and completed one year late, and certain construction defects remained. The economy declined soon after the project was completed in June 2007. Over the next two years, Ball Four struggled in the weakened economy, and by November 2009, it was unable to make the interest payment due on the note to FirsTier. In the midst of structuring a deal with FirsTier to cure the arrears, FirsTier called the note and initiated a foreclosure proceeding against Ball Four.

**A.    Ball Four's Chapter 11 Bankruptcy Case**

Ball Four filed for relief under Chapter 11 of the Bankruptcy Code on September 21, 2010 (Case No. 10-33952 EEB), and the case was adjudicated before another division of this Court. Ball Four indicated FirsTier's foreclosure action was the primary cause for seeking bankruptcy protection.

FirsTier filed a proof of claim in the amount of $3,572,158.12 in Ball Four's case. Almost two months later, FirsTier was closed by the Colorado Division of Banking, and the FDIC was appointed as receiver and assumed all rights and operations of FirsTier. On August 4, 2011, the FDIC conveyed all rights under the original promissory note to SIP. It is undisputed SIP is the successor in interest to FirsTier's claim.

With respect to SIP's claim, Ball Four's Second Amended Plan of Reorganization provides as follows:

> Class 3. FirsTier Bank. Class 3 is impaired under the Plan. The Debtor disputes the allowability of this claim. To the extent that the claim of the Class 3 creditor becomes an allowed secured claim, such claim shall be repaid by the Class 3 creditor retaining its lien(s) securing its claim to the extent of its allowed secured claim and in the same priority as its pre-petition lien(s) and receiving monthly payments of principal which shall be equal to the allowed amount of the Class 3

---

[6] See Exhibits 1 through 3.

>creditor's claim plus interest at 6% per annum amortized over 25 years with a five-year balloon payment, with the first payment due on the later of the Effective Date or 30 days after the Court enters a Final Order allowing the secured claim of the Class 3 creditor, and continuing monthly thereafter until the balloon payment shall become due.
>
>Upon payment in full of the allowed secured claim of the Class 3 creditor, the lien(s) of the Class 3 creditor shall be released and the Debtor shall own its Assets free and clear of the Class 3 creditor's lien(s).[7]

In summary, Ball Four's plan provides SIP's claim will be paid in full, in whatever amount deemed allowed.

Notably, FirsTier, the FDIC and SIP did not object to the above treatment in Class 3 in Ball Four's plan, nor did they object to the feasibility of the same. On August 29, 2011, Judge Brown confirmed Ball Four's Second Amended Plan of Reorganization. Under the confirmed plan, Ball Four's payments to SIP on the Class 3 claim are to commence on the **later** of the effective date or thirty days after the Ball Four Court enters a final order allowing the claim. Although the effective date has passed, a final determination of SIP's claim has not been made.[8] Based on the clear language of Ball Four's confirmed plan, and until a final order determining the allowance of SIP's claim enters, Ball Four is not obligated to make any payments to SIP (a point SIP conceded at oral argument before this Court).

---

[7] Exhibit 6, at p. 8, ¶ 4.3.

[8] On January 17, 2012, Allen & Vellone, as special counsel for Ball Four, commenced an adversary proceeding against SIP (Adv. Proc. No. 12-1036 EEB), asserting claims for breach of contract, breach of implied covenant of good faith and fair dealing, equitable subordination, and disallowance of SIP's claim. One year after the adversary proceeding was commenced, and following a flurry of pleadings, SIP filed an Answer. The next day SIP filed a Motion for Summary Judgment with respect to all claims for failing to state a claim upon which relief may be granted. Ball Four filed a response, along with a Motion to Amend the Complaint and a Motion to Hold the Proceeding in Abeyance. On February 26, 2013, the Ball Four Court entered its Order holding the adversary proceeding in abeyance pending a ruling on SIP's Motion for Summary Judgment.

Two days later, SIP filed a combined objection to Ball Four's Motion to Amend the Complaint and a Motion to Hold the Proceeding in Abeyance. The Court overruled the combined objection and reiterated no discovery would be permitted until the Motion for Summary Judgment was determined. SIP's Motion for Summary Judgment is currently pending before that division.

Ball Four filed its Chapter 11 Final Report and Motion for Final Decree, indicating the Second Amended Plan of Reorganization became final and the Ball Four estate was fully administered pursuant to Fed. R. Bankr. P. 3022. The Court granted Ball Four's Motion for Final Decree over SIP's objection, and Ball Four's bankruptcy case was closed on March 13, 2013.

### B. The Gentrys' Chapter 11 Bankruptcy Case

After acquiring the original promissory note, SIP commenced litigation against the Gentrys in Jefferson County seeking collection under the Personal Guaranties. On November 29, 2011, the Gentrys filed this Chapter 11 case, and the state court litigation was automatically stayed. SIP's collection action was the primary cause of the Gentrys' individual bankruptcy filing. As in the Ball Four case, the Gentrys hired Allen & Vellone as special counsel to object to SIP's claim, which objection has not yet been filed.

According to their Amended Disclosure Statement, the Gentrys each receive a monthly gross salary of $7,000 from Ball Four. The Gentrys anticipate their monthly gross salary will increase to $10,000 each, and the they will fund their Amended Plan and ongoing living expenses with this income. The Gentrys' Amended Plan proposes 100% payment of all "allowed" secured and unsecured claims.[9] The Amended Plan provides the following treatment for SIP's claim:

> Class 6. 2011 SIP-CRE/CADC Venture, LLC. The disputed unsecured claim of the Class 6 creditor is evidenced by a personal guaranty signed by the Debtors guarantying [sic] the secured claim of the Class 6 creditor which is owed to the Class 6 creditor by Ball Four. When the Class 6 creditor's disputed claim is determined to be an allowed claim by entry of a Final Order, the allowed unsecured claim will be paid in full by Ball Four pursuant to the terms of the confirmed Chapter 11 Plan of Reorganization of Ball Four. The Class 6 creditor's

---

[9] The Amended Plan defines "allowed claim" as follows:

[A] claim (a) in respect of which a Proof of Claim has been timely filed with the Court within the applicable period of limitation fixed by Bankruptcy Rule 3003 or (b) scheduled in the list of creditors prepared and filed with the Court by the Debtors pursuant to Bankruptcy Rules 1007 and 3003, and not listed as disputed, contingent or unliquidated as to amount, in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation pursuant to Bankruptcy Rule 3007 or an Order of the Court, or as to which any such objection has been terminated by an Order or Judgment which is no longer subject to appeal, or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.

Amended Plan, at p. 2, ¶ 1.3.

allowed unsecured claim will be paid by Ball Four as provided for in Ball Four's confirmed Plan of Reorganization.[10]

On December 5, 2013, the Court approved the Gentrys' Amended Disclosure Statement and set a hearing on confirmation of the Amended Plan. The deadline for ballots and objections to confirmation of the Amended Plan was January 23, 2013. According to the Ballot Summary,[11] the general unsecured creditor class (Class 8) voted to accept the Amended Plan, thereby satisfying the requirements of 11 U.S.C. § 1126(c).[12] SIP submitted the only ballot rejecting the Amended Plan. Class 7, the only other impaired class entitled to a vote, did not submit a ballot, and is deemed to have accepted the Amended Plan.[13]

The Office of the United States Trustee filed a Limited Objection to Confirmation, which was resolved by the Gentrys' Erratum to the Amended Plan[14] and the objection was withdrawn. SIP filed the only other objection to confirmation of the Amended Plan.

## DISCUSSION

To be confirmed, a Chapter 11 plan of reorganization must comply with each requirement of § 1129(a).[15] "The proponent of a plan must demonstrate compliance by a preponderance of the evidence."[16] The issues before this Court are whether SIP's objections to confirmation are valid, and whether the Gentrys have otherwise demonstrated compliance with § 1129(a).

SIP objected to confirmation of the Gentrys' Amended Plan for the following four reasons: 1) the Amended Plan discharges the Gentrys from their

---

[10] Amended Plan, at p. 7, ¶ 4.1.

[11] Docket No. 108.

[12] Unless otherwise noted in the text, all future statutory references are to title 11 of the United States Code.

[13] *In re Ruti-Sweetwater, Inc.*, 836 F.2d 1263 (10th Cir. 1988).

[14] Docket No. 107. The Erratum addressed the U.S. Trustee's Limited Objection and corrected the language in the Amended Plan at ¶¶ 8.7 and 8.9 only. The Erratum did not modify or otherwise change the payments to be made to the Gentrys' creditors pursuant to the provisions of the Amended Plan.

[15] *In re Paige*, 685 F.3d 1160, 1177 (10th Cir. 2012).

[16] *Id.* (citing *Heartland Fed. Savs. & Loan Ass'n v. Briscoe Enters., Ltd., II (In re Briscoe Enters., Ltd., II)*, 994 F.2d 1160, 1165 (5th Cir. 1993)).

Page 5 of 15

Personal Guaranties; 2) the Amended Plan unnecessarily extends the Gentrys' ability to object to SIP's claim; 3) the Amended Plan violates the absolute priority rule; and 4) the Amended Plan is not feasible. As set forth below, the Court is unpersuaded by each of SIP's arguments.

### A. The Amended Plan does not discharge the Gentrys' obligations to SIP under the Personal Guaranties.

SIP argues the Amended Plan discharges the Gentrys' individual obligations under the Personal Guaranties by having Ball Four pay the underlying obligation. This first objection is a red herring belied by the plain language in the Amended Plan. Notwithstanding § 524(e), which prohibits the discharge of non-debtor liabilities,[17] there is no language or provision in the Amended Plan attempting to release or discharge the Gentrys from their obligations under the Personal Guaranties.[18]

Contrary to SIP's argument, the discharge provision in the Amended Plan states as follows:

> Upon completion of payments by the Debtors under their Plan to the holders of Allowed Unsecured Claims in Class 8 of the Plan, **and by Ball Four under its confirmed Plan of Reorganization to the Class 6** and Class 7 creditors, the Debtors will request, after notice pursuant to Rule 9013 L.R.B.P., that the Court enter a discharge pursuant to 11 U.S.C. § 1141(d)(5) for the benefit of the Debtors."[19]

This provision expressly indicates the Gentrys cannot request a discharge until after SIP's claim is paid in full as provided in the Ball Four plan.[20] In other words, if SIP's allowed claim is not paid in full by Ball Four, the Gentrys may not seek a discharge in this case.

In addition, the default provision of the Amended Plan preserves all SIP's state law remedies against the Gentrys should Ball Four default on payments to SIP. This provision states as follows:

---

[17] Under § 524(e), "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."

[18] This argument may have more appropriately raised in the Ball Four case.

[19] Amended Plan, at p. 16, ¶ 8.7 (emphasis added); *see also* Erratum to Amended Plan, at ¶ 5 (containing identical language).

[20] Amended Plan, at p. 16, ¶ 8.7.

> <u>Default</u>. In the event of a default by the Reorganized Debtors with respect to payments to creditors under this Plan, **or by Ball Four with respect to payments to the Gentry amended plan Class 6** and Class 7 creditors under Ball Four's confirmed Plan of Reorganization, **such creditors shall be entitled to take action to collect the full amount of their debt with whatever collection remedies it [sic] normally would have available when payments to such creditors are not made as scheduled were this case not in bankruptcy**. The creditors shall give the Reorganized Debtors written notice of any default and the Reorganized Debtors shall have ten (10) calendar days to cure such default. Any failure to act on any default or acceptance of late payments will not act as a waiver by the creditor to act on further defaults.[21]

The default provision thus does not contain any release of the Personal Guaranties, and confirms SIP's right to pursue collection against the Gentrys in the event of any default by the Gentrys or Ball Four.

Accordingly, the Court concludes the Amended Plan does not "mask a stealth discharge" as alleged by SIP, and finds this argument to be without merit. The Amended Plan does not release the Personal Guaranties, and the unambiguous language contained in the Amended Plan indicates the Gentrys are ineligible to seek a discharge until SIP's allowed claim against the Gentrys is paid in full by Ball Four.

**B.    The Amended Plan does not unnecessarily extend the Gentrys' ability to object to SIP's claim.**

The Gentrys propose the following procedures for claims objections in their Amended Plan:

> 8.1 <u>Procedures for Resolving Contested Matters</u>.
>
> (a) The Reorganized Debtors' objections to claims shall be filed with the Court and shall be served on the holder of each of the claims to which objections are filed by no later than 180 days after the Effective Date. The Reorganized Debtors shall litigate to judgment, settle or withdraw objections to all such Disputed Claims; and
>
> (b) No payments or distributions shall be made under the Confirmed Plan with respect to all or any portion of a Disputed Claim or Administrative Expense unless and until all objections to such Disputed Claim or Administrative Expense have been determined by

---

[21] Amended Plan, at p. 17, ¶ 8.10 (emphasis added).

>Final Order of the Court. Payments and distributions to holders of Disputed Claims or Administrative Expenses under the Confirmed Plan, to the extent such become Allowed Claims or Administrative Expenses, shall be made in accordance with the provisions of this Plan.[22]

SIP asserts Ball Four has avoided "any post-confirmation payments to SIP by setting a claim-objection deadline that is 180 days after the plan's effective date. [The Gentrys'] plan includes the same provision."[23] Another red herring.

Although counsel for SIP conceded Ball Four was not yet required to make any payments under its confirmed plan, SIP's second objection to confirmation of the Amended Plan is simply a "delay" argument. SIP asserts a 60-day window is more reasonable than 180 days.

In response, the Gentrys asserted 180 days is not unreasonable, but in any event, they would file an objection to SIP's claim prior to the confirmation hearing. However, the Gentrys have not filed such an objection, leaving the Court to evaluate the reasonableness of the 180-day window.

While the Court finds 180 days from the effective date of the Amended Plan is not unreasonable, a shorter deadline to address SIP's claim is warranted given the limited number of creditors and the contentious history between SIP and the Gentrys in this case. Therefore, in order to balance the concerns of these parties and based on the representations of counsel, the Court will shorten the deadline to object to SIP's claim against the Gentrys to 60 days from the effective date of the Amended Plan.

**C. Based on the terms of the Personal Guaranties, the Amended Plan does not violate the absolute priority rule.**

Section 1129(b)(2)(B), the "fair and equitable" confirmation provision, includes the absolute priority rule:

>The Code explains that "the condition that a plan be fair and equitable with respect to a class includes" the requirement that "[w]ith respect to a class of interests . . . the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property." §§ 1129(b)(2), 1129(b)(2)(C)(ii). This requirement, known as the absolute priority rule, "requires that certain classes of claimants be paid in full before any member of a subordinate class is paid." *See Allen v. Geneva Steel*

---

[22] Amended Plan, at p. 13, ¶ 8.1.

[23] *See* Objection, at p. 3-4.

*Co. (In re Geneva Steel Co.)*, 281 F.3d 1173, 1180 n.4 (10th Cir. 2002).[24]

In its simplest terms, the absolute priority rule requires creditors to be paid in full before any lower priority participant, such as an equity holder, may share in the assets of the reorganized entity.[25] The absolute priority rule applies to individual Chapter 11 debtors.[26]

Here, it is undisputed SIP holds an unsecured claim against the Gentrys under the Personal Guaranties, and Ball Four is not in default of its obligations under the Ball Four plan. Furthermore, although guaranteed by the Gentrys, Ball Four's own indebtedness to SIP is not a non-recourse obligation.[27] Ball Four's confirmed plan provides it will pay the full allowed amount owed to SIP once that amount is determined. Consistent with this structure, the Gentrys' Amended Plan states SIP's claim against the Gentrys will be paid in full via Ball Four's payment in full of the determined indebtedness.

Despite this "paid in full" language, SIP argues the Amended Plan violates the absolute priority rule for two reasons: 1) the Gentrys guaranteed Ball Four's indebtedness under the original note, not the court-determined allowed debt under Ball Four's confirmed plan; and 2) SIP's unsecured claim against the Gentrys under the Personal Guaranties exceeds SIP's claim against Ball Four under the confirmed plan.[28] More red herrings.

The cases cited by SIP involve the more typical scenario where a corporate debtor's plan of reorganization contains a release of related personal guaranties. "While the *extent* of a guarantor's liability certainly does not exceed the maker's underlying obligation, the actual *liability* of the guarantor may exist even when the maker . . . is not liable on the note."[29] As set forth above,

---

[24] *In re Paige*, 685 F.3d 1160, 1183 (10th Cir. 2012).

[25] *See Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 202 (1988).

[26] *See In re Stephens*, 704 F.3d 1279, 1286-87 (10th Cir. 2013).

[27] *See* Exhibit 3. There is no provision in the Personal Guaranties (express or implicit) suggesting the Gentrys could be held liable for a greater liability than Ball Four, whose confirmed plan provides for payment in full. *See e.g. First Interstate Bank v. Colcott Partners IV,* 833 P.2d 876, 878 (Colo. App. 1992).

[28] At oral argument, counsel for SIP represented this difference was between $500,000 and $1,000,000, but offered no evidence this amount was accurate.

[29] *Alien, Inc. v. Futterman*, 924 P.2d 1063, 1067 (Colo. Ct. App. 1995) (quoting *United States v. Little Joe Trawlers, Inc.,* 776 F.2d 1249, 1252 (5th Cir. 1985)). The Court notes SIP only submitted the latter half of this sentence in support of its position,

neither the confirmed Ball Four plan, nor the Gentrys' Amended Plan, contain releases of the Personal Guaranties. Thus, the authority relied upon by SIP is inapposite.

Rather, the Court agrees with the Gentrys - their obligation to SIP arises from Ball Four's obligation to SIP. Ball Four's original indebtedness to SIP was replaced by the terms of its confirmed Chapter 11 plan. As the United States District Court for the District of Colorado observed:

> Confirmation generally discharges the debtor from its pre-confirmation debt and substitutes the obligations of the plan for the debtor's prior indebtedness. *See* § 1141(c), (d). "The plan is essentially a new and binding contract, sanctioned by the Court, between a debtor and his preconfirmation creditors." *In re Ernst*, 45 B.R. 700, 702 (Bankr. D. Minn. 1985).[30]

The confirmed Ball Four plan is a new and binding contract, substituting the previous indebtedness under the original note with the obligations in the plan. There is no question SIP is entitled to payment in full of its allowed claim under the Ball Four plan, once the litigation regarding the allowance of its claim is determined. Therefore, the Personal Guaranties obligate the Gentrys to repay the same substituted indebtedness, and not a different indebtedness under the original (now modified) loan.

The terms of the Personal Guaranties and applicable Colorado law independently support this conclusion.[31]

> Like any other contract, the language of a guaranty is to be reasonably interpreted according to the intention of the parties as disclosed by facts and circumstances surrounding its execution. *Valley National Bank v. Foreign Car Rental, Inc.*, 157 Colo. 545, 404 P.2d 272 (1965). Further, guarantee agreements are to be strictly construed in favor of the guarantor. *Walter E. Heller & Co. v. Wilkerson*, 627 P.2d 773 (Colo. App. 1980).

---

overlooking the former half of the sentence addressing the heart of the issue.

[30] *In re Lacy*, 304 B.R. 439, 443-44 (D. Colo. 2004).

[31] By their terms, the Personal Guaranties are governed by Colorado law. *See* Exhibits 1 and 2. "In construing and interpreting contracts, this Court must look to state law. See *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). . . . Under Colorado law, interpretation of a written contract is a question of law. *Fibreglas Fabricators, Inc. v. Kylberg,* 799 P.2d 371, 374 (Colo.1990)." *In re Centrix Fin., LLC*, 434 B.R. 880, 884 (Bankr. D. Colo. 2010).

> A guaranty is a collateral promise to answer for the debt or obligation of another. *See* § 4-3-416, C.R.S. The extent of guarantor's liability is determined by the language of the instrument itself, and *absent language to the contrary*, it is usually equal to that of the principal debtor. *Continental National Bank v. Dolan*, 39 Colo. App. 16, 564 P.2d 955 (1977).[32]

Under the Personal Guaranties, the Gentrys agreed to guaranty "full and punctual payment and satisfaction of the Indebtedness of [Ball Four] to [SIP.]"[33] "Indebtedness" is defined in the Personal Guaranties as follows:

> INDEBTEDNESS. The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that [Ball Four] individually or collectively or interchangeably with others, owes or will owe [SIP]. "Indebtedness" includes, without limitation, loans, advances, debts, overdrafts Indebtedness, credit card Indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of [Ball Four], and any present or future judgments against [Ball Four], future advances, loans **or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred**; due or to become due by their terms or acceleration; **absolute or contingent; liquidated or unliquidated; determined or undetermined**; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; **secured or unsecured**; joint or several or joint and several; **evidenced by a negotiable or non-negotiable instrument or writing**; originated by [SIP] or another or others; barred or unenforceable against [Ball Four] for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, *ultra vires* or otherwise); and originated

---

[32] *First Interstate Bank of Denver, N.A. v. Colcott Partners IV*, 833 P.2d 876, 878 (Colo. Ct. App. 1992); *see also FBS AG Credit, Inc. v. Estate of Walker*, 906 F. Supp. 1427, 1430-31 (D. Colo. 1995) .

[33] Exhibits 1 and 2, at p. 1.

then reduced or extinguished and then afterwards increased or reinstated.[34]

Viewing the Personal Guaranties in favor of the Gentrys, as is proper under the *First Interstate Bank* case, the Court finds the Gentrys' derivative obligation under the Personal Guaranties does not result in a greater debt owed to SIP than the indebtedness owed by Ball Four under the confirmed Chapter 11 plan. Simply, there is no provision in the Personal Guaranties creating a separate or greater obligation than the indebtedness of Ball Four.

In conjunction with the above conclusion, the Court also determines the Amended Plan does not violate the absolute priority rule because all claims (including SIP's Class 6 claim against the Gentrys) will be paid in full. The Amended Plan provides for payment in full of all secured claims as required under § 1129(b)(2)(A). With respect to the Gentrys' unsecured claims, the Amended Plan complies with § 1129(b)(2)(B). Accordingly, the Court finds the Gentrys have met the absolute priority rule and the Amended Plan complies with § 1129(b) because the Amended Plan does not discriminate unfairly in that all similar claims are treated the same.

**D.   The Amended Plan is Feasible.**

SIP contends the Gentrys' Amended Plan is not feasible because Ball Four has no ability to pay SIP's allowed claim in full under the terms of Ball Four's confirmed plan of reorganization. Even though Ball Four's plan was confirmed without objection, SIP now asserts Ball Four's post-confirmation operations have failed to generate sufficient cash to reserve funds to pay SIP's allowed claim or provide for the five (5) year balloon payment required by the confirmed plan. Red herring number four.

SIP's objection stems from Ball Four's ability to perform. This objection mirrors the arguments SIP made before Judge Brown in SIP's Objection to Final Decree in the Ball Four bankruptcy case.[35] Judge Brown overruled SIP's objection and entered the final decree in that case. Although SIP urges this Court to consider Ball Four's post-confirmation performance, Ball Four is not in default of its confirmed plan. Moreover, the doctrine of *res judicata* precludes this Court from entertaining arguments regarding Ball Four's operations which could have been raised prior to confirmation of the Ball Four plan. Specifically,

---

[34] *Id.* (emphasis added).

[35] *See* Exhibit A attached to SIP's Objection to Confirmation of the Gentrys' Amended Plan. Judge Brown overruled SIP's objection, stating "the SIP [adversary proceeding] has not been finally resolved and, thus, SIP's claim has not yet been allowed. Accordingly, [Ball Four] is not currently obligated to make payments to SIP or to segregate funds for such payments."

the entry of the Ball Four confirmation order constitutes a final judgment with *res judicata* effect.[36] The Ball Four confirmation order "is an absolute bar to the subsequent action or suit between the same parties . . . not only in respect of every matter that was actually offered and received to sustain the demand, but also as to every [claim] which might have been presented."[37] In addition, this Court declines SIP's invitation to interfere in the Ball Four bankruptcy case or the related adversary proceeding pending before another division of this Court.

SIP further argues the Gentrys "cannot bootstrap the feasibility of their plan by relying on the confirmed status of Ball Four's plan . . . and this court must 'carefully scrutinize' [the Gentrys'] plan to ensure that has a reasonable probability of success . . . ."[38] On this point, the Court will provide the requested independent review of the Gentrys' proposed Amended Plan.

Feasibility of a Chapter 11 plan is a question of fact, and the Gentrys bear the burden to show the feasibility of their Amended Plan by a preponderance of the evidence.[39]

> Feasibility is the shorthand term for the requirement of confirmation as set forth in § 1129(a)(11); it imposes a requirement that any plan must provide a realistic and workable framework for reorganization. A plan is considered feasible where it is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.[40]

"[T]he bankruptcy court has an obligation to scrutinize [a] plan carefully to determine whether it offers a reasonable prospect of success and is workable."[41]

---

[36] *Stoll v. Gottlieb*, 305 U.S. 165 (1938); *Jaurdon v. Cricket Communications, Inc. (In re Cricket Communications, Inc.)*, 412 F.3d 1156, 1158 (10th Cir. 2005) (claimants against a debtor were bound by the terms of a confirmed plan provided they received notice and an opportunity to object to the plan's confirmation).

[37] *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1552 (11th Cir. 1990) (quoting *Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 319 (1927)).

[38] SIP's Objection, at p. 2 (quoting *Inv. Co. of the Southwest*, 341 B.R. at 311).

[39] *In re Inv. Co. of the Southwest, Inc.*, 341 B.R. 298, 310 (10th Cir. BAP 2006).

[40] *Id.* at 310-11.

[41] *Travelers Ins. Co. v. Pikes Peak Water Co. (In re Pikes Peak Water Co.)*, 779 F.2d 1456, 1460 (10th Cir. 1985).

"The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts" of the case.[42]

Under the confirmed Ball Four plan, Ball Four must pay the allowed indebtedness to SIP in full.  The Gentrys' Amended Plan parallels Ball Four's plan, providing the Gentrys indebtedness under the Personal Guaranties will be satisfied by Ball Four's payment of the guaranteed indebtedness.  While the Gentrys are not making payments on SIP's claim, the Amended Plan includes a bar to seeking a discharge until the underlying indebtedness is paid in full.  As additional protection, SIP shall retain all state law remedies with respect to the Personal Guaranties should Ball Four default or fail to pay the indebtedness in full according to its confirmed plan.

Under the facts of this case, the evidence indicates the Gentrys, assuming they maintain the status quo, will likely be able to comply with the terms of the Amended Plan because SIP's allowed claim will be paid in full by Ball Four.  Therefore, the Court finds this requirement has been satisfied.

## CONCLUSION

SIP and its predecessors acquiesced in the confirmation of Ball Four's plan of reorganization.  After several failed post-confirmation challenges to Ball Four's confirmed plan before Judge Brown, SIP refocused its aim on the Gentrys' Amended Plan.  However, SIP's opposition to confirmation is unconvincing, and in most instances, unsupported by evidence.  SIP's post-confirmation opposition to Ball Four's plan was rejected by Judge Brown, and SIP objected to confirmation of the Gentrys' Amended Plan by employing similar (and poorly-camouflaged) arguments relating to Ball Four's performance under its confirmed plan.  The guarantor releases and discharge provisions touted by SIP were non-existent in the Amended Plan (or the confirmed Ball Four plan).  SIP sought financial documents for Ball Four's pre-confirmation and post-confirmation operations, urging the Court to reconsider Ball Four's ability to perform under its confirmed plan.  SIP's conduct in this case, evidenced by the long procedural history and arguments made on the record, reveal SIP's clear motive to make a collateral attack Ball Four's confirmed plan.  In any event, the arguments are insufficient to prevent confirmation of the Gentry's Amended Plan.  For the reasons stated herein, the Court finds the Amended Plan is confirmable over SIP's objections.

Based on the foregoing, the Court

---

[42] *Clarkson v. Cooke Sales & Serv. Co. (In re Clarkson)*, 767 F.2d 417, 420 (8th Cir. 1985) (quotation omitted).

ORDERS that SIP's Objection (Docket No. 95) to confirmation of the Gentrys' Amended Plan of Reorganization is OVERRULED. No other objections remain to confirmation of the Gentrys' Amended Plan. Accordingly, the Court

FURTHER ORDERS the Gentrys are granted leave to file a Motion for Entry of Order with a proposed confirmation order and an Affidavit in support of confirmation of the Amended Plan, as modified by the Erratum, no later than fourteen (14) days from the date of this Order. The Court will review the matter following submission of these pleadings. The Court

FURTHER ORDERS the Gentrys shall file an objection to SIP's claim against the Gentrys, if any, within sixty (60) days from the Effective Date of the Amended Plan. Nothing in this order shall impact the claims objection procedures as set forth in the Amended Plan for any other claims against the Gentrys. The Court

FURTHER ORDERS Ball Four's Motion for Protective Order (Docket No. 120), which was previously granted on an interim basis pending this ruling, is hereby granted as final.

Dated September 12, 2013                BY THE COURT:

                                        Michael E. Romero
                                        United States Bankruptcy Judge